**In re C.W. NORMAN, Debtor.**

**Earl GILLIAN, Jr., Trustee in Bankruptcy for C.W. Norman, Debtor, Plaintiff,**

v.

**CONOCO, INC., Defendant.**

**In re ZIP ENTERPRISES, INC., Debtor.**

**Ed HILL, Trustee in Bankruptcy for Zip Enterprises, Inc., Plaintiff,**

v.

**CONOCO, INC., Defendant.**

**Bankruptcy Nos. 82–01341, 82–01342. Adv. Nos. 83–0084, 83–0105.**

United States Bankruptcy Court, M.D. Alabama.

July 22, 1983.

**2**

John A. Henig, Jr. and E. Terry Brown, Montgomery, Ala., for trustee.

Karl B. Benkwith, Jr., Montgomery, Ala., for American Petrofina Marketing, Inc.

Von G. Memory, Montgomery, Ala., Perry S. Smith, Houston, Tex., for Conoco Inc.

## OPINION ON COMPLAINTS TO DETERMINE JUDICIAL LIENS TO BE VOID

RODNEY R. STEELE, Bankruptcy Judge.

In these two bankruptcy cases, the trustees have filed complaints attacking the judicial lien of Conoco, Inc.

These complaints filed on March 2, 1983, (# 83–0105) and February 18, 1983, (# 83–0084) respectively, assert that the judgment obtained by Conoco, Inc. in the United States District Court for the Middle District of Alabama against C.W. Norman and Zip Enterprises, Inc., as recorded in various counties in Alabama, is void against the trustees in bankruptcy of these two debtors.

The trustees assert that the judgments are void because (1) the certificates of judgment are defective, and the filing of a defective certificate of judgment creates no lien under the law of Alabama; and (2) the certificates of judgment filed for record, if they are liens against the property of these debtors, are avoidable at the instance of the trustees under Title 11, U.S.Code, Section 547 as a preference, and under Section 6-9-211 of the Alabama Code (1975), because that Section declares such liens void if obtained within four months of the date of bankruptcy.

The answer filed by Conoco, Inc. joins issue and further asserts that the Judgments and Orders of this Bankruptcy Court have already determined that Conoco's liens are valid and perfected judicial liens, and are not now subject to attack under doctrines of res adjudicata and collateral estoppel.

## FINDINGS

It may be helpful to outline the sequence of events giving rise to this controversy.

1. On April 22, 1982, judgment entered for Conoco, Inc. against Zip Enterprises, Inc. and C.W. Norman, in the amount of $602,231.37, in the United States District Court. A certificate of judgment issued from the Clerk of that Court for the sum of $602,231.37, but the certificate does not specify any court costs. On the same day, the certificate of judgment was filed with the Probate Courts of Montgomery, Autauga, and Elmore Counties.

2. On April 29, 1982, C.W. Norman and Zip Enterprises, Inc. filed a motion in the U.S. District Court to alter or amend the April 22, judgment, a portion of which represented pre-judgment interest not allowed by Alabama law.

3. On May 11, 1982, the United States District Court entered an Order changing the judgment amount to $591,642.67. This sum represented the original principal amount of $581,848.70, but recomputed the interest to be $9,793.97, for a total judgment of $591,642.67.

4. May 20, 1982, is the 90th day before the filing of the debtors' petitions in bankruptcy (August 18, 1982).

5. On May 24, 1982, a certificate of judgment issued from the Clerk of the U.S. District Court, based upon the amended judgment, in the amount of $591,642.67. This second certificate omits the amount of costs. It shows that the time for appeal commenced to run on the date of the entry of the amended judgment.

The May 24, 1982, certificate of judgment was recorded in the Office of the Judge of Probate of Montgomery County, Alabama on May 25, 1982, and in the Offices of the Judges of Probate for Autauga, Chilton, Coffee and Elmore Counties, Alabama on May 26, 1982.

6. On August 18, 1982, C.W. Norman and Zip Enterprises, Inc. filed Chapter 11 petitions in bankruptcy. (Numbers 82–01341 and 82–01342.)

7. On September 3, 1982, the First Alabama Bank of Montgomery and Romaco, Inc., filed an adversary proceeding (# 82–0436) in these Chapter 11 cases against C.W. Norman and Zip Enterprises, Inc. requesting the Court to approve a foreclosure sale of property which had already occurred, and which property belonged to Zip Enterprises, Inc. Conoco, Inc. was not named as a party in that adversary proceeding. A companion adversary proceeding (# 82–0431) covering property of C.W. Norman was filed by the First Alabama Bank and Patrick Ryan seeking the same relief.

On September 22, 1982, the parties to the adversary proceedings brought by First Alabama Bank of Montgomery, filed a stipulation of facts, pursuant to which Bankruptcy Judge Leon J. Hopper, entered an Order holding, in pertinent part, that the Zip and C.W. Norman properties, which had been foreclosed upon, was not property of the estate at the time of the filing of the petition; however, the sale of that property at foreclosure had generated an excess of $132,636.30 over and above the amount needed to satisfy the mortgages of the First Alabama Bank. This amount was ordered held by the debtor in possession or his attorney, pending the further order of the Court.

8. On September 24, 1982, Conoco, Inc. filed a motion in that adversary proceeding brought by the First Alabama Bank, seeking to have the Court amend its Order to recognize that Conoco, Inc. held a valid and perfected security interest in the property of these debtors, by virtue of its recorded judgment lien, and therefore had a security interest, by judicial lien, in the excess proceeds from foreclosure. The motion was heard on October 20, 1982.

9. On November 1, 1982, Judge Hopper entered an amended Order finding that the Alabama National Bank of Montgomery, and Conoco, Inc., "have valid perfected liens of judgment creditors on the real

property of C.W. Norman, located in Montgomery County, Alabama."

In that November 1 Order, the Court reserved the issue of the priority of liens as between Alabama National Bank [1] and Conoco, Inc.

10. On November 29, 1982, the debtors' Chapter 11 cases were converted to cases under Chapter 7.

11. Although there are no transcripts of the proceedings involving the hearing by the Bankruptcy Judge on Conoco's motion, it appears from the docket minutes of the Court that when the matter was heard on October 20, 1982, the attorney for debtor in possession was present and that the attorney for Conoco, Honorable Luther Waller, was to submit a proposed Order amending the original Order. The amending Order was to embrace the complaint filed by Alabama National Bank, seeking recognition of its judicial lien rights.

That amended Order as referred to above, found that the liens were valid and perfected liens.

12. On February 1, 1983, the Bankruptcy Court, in the Chapter 7 proceedings of C.W. Norman (82–01431) and in response to an application by Conoco and the Alabama National Bank, determined the priorities as to the $132,636.30 surplus on hand (then held by the Chapter 7 trustee, Ed Hill). The Order determined that the lien of the Alabama National Bank was superior to the lien of Conoco, Inc. At this hearing, although the trustee for C.W. Norman and Zip Enterprises (Ed Hill) was not present, the trustee had had notice of the hearing from the Court.

The Order of February 1, 1983, ordered the $132,636.30 paid over to the Alabama National Bank.

In that February 1 Order, the Court recognized that "the Alabama National Bank of Montgomery and Conoco, Inc. were both determined to have valid and perfected security interests good against the trustee or

---

1. Another judgment lien creditor which had also filed an adversary proceeding (# 82–0474) to re-    cover these excess proceeds.

debtor in possession in that same Order of November 1, 1982." [Referring to the Order of Judge Hopper.]

13. In the adversary proceeding in which the Alabama National Bank of Montgomery sought the payment over of the excess funds, (# 82–0474) hearing was held on that matter in the Chapter 7 proceedings on December 17, 1982, and the Court, by its Order filed on December 20, 1982, ordered the money held by the trustee in escrow; that is, not at that time subject to the claims in the estate or the claims of the estate for administrative expenses. The purpose of that escrow arrangement was to give the trustee, Ed Hill, adequate time to investigate his rights since the conversion to Chapter 7, and the Order specifically provided, "if trustee files no answer or motion asserting a right under the law to these proceeds before January 17, 1983, then the Court will conclude that this complaint for recovery is submitted as of that date."

Trustee Ed Hill filed no answer or motion asserting such a right.[2]

14. It subsequently appeared that a conflict might exist between the two estates of C.W. Norman and Zip Enterprises, Inc. The Court relieved the trustee, Ed Hill, in the C.W. Norman case, and appointed Earl Gillian, Jr. in his place, and also appointed another attorney for the trustee Gillian.

15. Then on February 18 and March 1, 1983, these two trustees filed these adversary proceedings. (# 82–0084 and # 82–0105). The first one is filed in the case of Zip; the second in the case of C.W. Norman. Both seek the same relief.

## CONCLUSIONS

### COLLATERAL ESTOPPEL

1. We are met at the outset of this inquiry as to the validity and perfection of the judgment lien of Conoco, with a claim that the matter is one already determined, that is, the principles of res adjudicata or collateral estoppel apply.

■ These defenses raised by Conoco are good defenses in the case of the Estate of C.W. Norman (# 82–01341). This Court, both in the Chapter 11 proceeding and in the superseding Chapter 7 proceeding, determined by Orders entered on November 1, 1982, and February 1, 1983, that Conoco, Inc. held a valid and perfected security interest good against the trustee or debtor in possession of that estate.

■ Such a conclusion would not always follow. A defense of res adjudicata or collateral estoppel would not ordinarily be available to prevent the trustee, in a superseding Chapter 7 case, from attacking a prepetition transfer. *Collier on Bankruptcy*, 14th Ed., Vol. 6–A, Para. 12.05[9], at pp. 441, 443, and 444. Certainly, there is nothing in the Bankruptcy law which even remotely suggests that a Chapter 11 trustee is required to exercise all of the powers of a general trustee in bankruptcy. Indeed, the interests of a debtor in possession in Chapter 11 may be entirely different from that of a trustee in a liquidating Chapter 7 bankruptcy. See *Davis v. Security National Bank of Nevada*, 447 F.2d 1094 (9th Cir.1971).

2. But where, as in this case, an issue is actually raised before a Court of competent jurisdiction, between the same parties in interest, involving the same issue, and that issue is decided then it must be concluded that collateral estoppel applies, and that the trustee is not able to attack the judgment lien of Conoco in the present adversary proceeding.

3. We deal with "issue" preclusion here. The initial proceeding, in which this issue of the validity and perfection of Conoco's judgment lien was specifically raised, was a complaint to lift stay and to authorize the completion of foreclosure on property of C.W. Norman. This present proceeding is a complaint to determine the validity, prior-

**2.** At this time, December 20, 1982, Ed Hill was trustee for C.W. Norman and for Zip Enterprises, Inc.

ity or extent of a lien. See Rule 701, Rules of Bankruptcy Procedure.

These two distinct causes of action may not, then, bring into play the "claim preclusion" aspect of res adjudicata.

■ 4. But where the same parties in the same court raise an issue common to two different causes of action, that common issue may be precluded. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

Such was the case here. In the Complaint to Lift Stay, (Adversary Proceedings numbered 82–0431 and 82–0436) filed by First Alabama Bank on September 2 and 3, 1982, the issue was raised by the motions of Conoco filed on September 24, 1982, to have its lien recognized. Its lien was recognized by the November 1, 1982 Order, as against C.W. Norman, the debtor in possession. The debtor in possession was then the defendant, and while Conoco was not a party/plaintiff or defendant, it was, in fact, a party in interest, represented in court, whose pleading was ruled upon, and whose rights were decided against the debtor in possession, C.W. Norman.[3]

Now the issue is raised again in this complaint to determine the validity, priority and extent of a lien. It is the identical issue, raised in the same court, a court which had and has jurisdiction to decide it.[4]

5. And we think it is now between or among the same parties. The trustee, successor in title and interest to the debtor in possession is now the plaintiff.[5] Conoco, which was present, which insisted upon its rights as a movant in the previous action, and which had those rights adjudicated then, is now the defendant. The interests of the First Alabama Bank, also decided then, are not involved here.

Nor does the character of the trust estate of the debtor in possession change when a Chapter 11 converts to Chapter 7, and a trustee in bankruptcy is appointed. The character, powers, and duties of the trust officers are the same, though, as is pointed out above, their interests and incentives may be different.[6]

■ 6. The ultimate issue—the validity and perfection of Conoco's lien—previously decided in the November 1, 1982, Order, precludes not only the relitigation of that very issue, but also subissues and matters necessary to the decision of that issue, namely, the sufficiency of the judgment and the judgment certificate upon which Conoco's Alabama judgment lien is based, and the sufficiency of the steps taken under Alabama law to make that judgment a lien, i.e., to perfect it. *Fayerweather v. Ritch*, 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193 (1904); *Sea Land Services v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9,[7] and Cf. *Merrill v. Walter E. Heller and Co. of Alabama*, 594 F.2d 1064 (5th Cir. 1979).

These sub-issues are the very and most obvious ones raised by the motion to have Conoco's judgment lien recognized.

7. Nor can we find that plaintiff/trustee and his predecessor, the debtor in possession, C.W. Norman, did not have a fair

**3.** The defendant, Zip Enterprises, Inc. was named by First Alabama Bank as a party defendant, (in Adversary Proceeding #82–0436) because the debt it held was against Zip. But the property in issue, which secured that debt, was the property of C.W. Norman.

**4.** See Rule of the U.S. District Court, promulgated December 23, 1982, styled "Jurisdiction of the Bankruptcy Court for the Middle District of Alabama." Subsection d.

**5.** The trustee and debtor in possession are certainly privies, if not identical. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

**6.** The related principle of "mutuality of estoppel," where, as here, collateral estoppel is sought to be used defensively, is not apropos here. Cf. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), and Cf. *Wolfson v. Baker*, 623 F.2d 1074 at 1077 (5th Cir.1980).

**7.** These precluded matters, necessary to the decision of the issue raised, are not the same thing as the preclusion of *issues* germane and not raised in a different *cause of action* tried in a prior proceeding. *Heiser v. Woodruff*, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946).

**6**

opportunity procedurally, substantively, and evidentially to pursue the estate's claim. *Blonder Tongue Laboratories, Inc. v. University of Illinois Foundation, et als.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). There was ample opportunity before the November 1, 1982, Order entered and before the February 1, 1983 Order entered. Both Orders entered on the original complaint to lift stay filed by First Alabama Bank.

8. It cannot be said that there was not sufficient incentive on the part of debtor in possession to question or contest the validity and perfection of the liens of Conoco and Alabama National Bank. The debtor in possession was, at the time, actively seeking the very funds in controversy for use in the Chapter 11 proceedings of C.W. Norman. Debtor in possession was obliged to examine not only the priority question, but the amounts of the judgments, and the validity and perfection of both judgments in question. He was, then, seeking to provide "adequate protection." Title 11, U.S. Code, Sections 361 and 362. And in fact, the Court decision on priority came some considerable time after the Court Order of November 1, relating to the validity and perfection of both liens. In light of this obligation, the argument of trustees that there was no necessity to contest Conoco's lien on November 1, because Alabama National's lien was obviously first, is not persuasive.

9. And while the issue decided in the prior action involved two parcels of realty and the excess proceeds therefrom on foreclosure, the prior decision as to the validity and perfection of the Conoco judgment lien would not be different as to other real or personal properties of C.W. Norman subject to such a lien. All property, real and personal in Alabama, except choses in action, are subject to a judgment lien of record. See Code of Alabama, 1975, Section 6-9-211. And see *Parklane Hosiery Co., Inc. v. Shore, supra; Johnson v. United States*, 576 F.2d 606 (5th Cir.1978); *Bank of Heflin v. Landmark Inns*, 604 F.2d 354 (5th Cir.1979).

10. The collateral estoppel conclusions reached above (Paragraphs 1–9) concerning the validity and perfection of the judgment lien of Conoco on the property of C.W. Norman's estate in Montgomery, Autauga and Elmore Counties, are not applicable to the property of the estate of Zip Enterprises, Inc., since the debtors in possession were not the same, estates were not the same, the property of the two estates is not the same, and the creditors are not necessarily the same. The adversary proceedings in which the issue of Conoco's lien was decided was not filed in the Zip Enterprise, Inc. proceedings (# 82–01341).

For additional reasons set out below, the judgment lien of Conoco against the property of Zip Enterprises, Inc. in Coffee and Chilton Counties is not good.

## VALIDITY AND PERFECTION OF CONOCO'S LIEN

1. The collateral estoppel issue aside, the certificate of judgment filed by Conoco in the Probate Courts of Montgomery, Autauga, and Elmore Counties on April 22, 1982, is a valid and perfected lien in those counties under applicable Alabama statute against the property of the estate of C.W. Norman and Zip Enterprises, Inc. subject to levy and sale.

The trustees in these cases argue that the provisions of Section 6-9-210 and 211 of the Alabama Code were not complied with by Conoco in making that recordation on April 22, 1982, and as a consequence, no lien ever arose. Section 6-9-210 reads:

The owner of any judgment entered in any court of this state or of the United States held in this state may file in the Office of the Judge of Probate of any county of this state, a certificate of the Clerk or register of the Court, by which the judgment was entered, which certificate shall show the style of the Court which entered the judgment, the amount and date thereof, and amount of cost, the names of all parties thereto, and the names of the plaintiff's attorney and shall be registered by the Judge of Probate in a book to be kept by him for that

purpose, which said register shall also show the date of the filing of the judgment....

Section 6–9–211 reads:

Every judgment, a certificate of which has been filed as provided in Section 6–9–210, shall be a lien in the county where filed on all property of the defendant which is subject to levy and sale under execution, and such lien shall continue for ten years after the date of such judgment; ...

2. These sections conform to Title 28, U.S.Code, Section 1963, which provides for the attachment of a lien of a federal District Court judgment under certain circumstances where the state law conforms such judgments to the state practice.

3. Trustees argue that Alabama case law requires a strict compliance with these Alabama Code sections. It is argued that since the amount of cost is not set out in the Certificates of Judgment herein, and since the amount of the judgment is not properly stated in the April 22 judgment, (the interest was not properly computed) that the certificate does not comply with the statutory requirements, and a lien never arose.

4. It is not disputed that all other provisions of the Alabama statute were met by Conoco in the filing of its Certificates of Judgment from the Clerk of the United States District Court.

5. It is important not to elevate form over substance in this instance. The several cases cited by trustee, principal of which is *Duncan et al v. Autauga Banking and Trust Co., et al.*, 223 Ala. 434, 136 So. 733 (1931), do just that. There Justice Brown held that "... to create a lien by filing for registration a Certificate of Judgment under the provisions of ... Code of 1923, there must be strict observance of the requirements of the Statute as to the contents of such certificate." There follow string citations.

This mechanistic, formulary approach to the establishment of a lien by the filing of a Certificate of Judgment is not supported by the cases which Judge Brown cites. He rejects a "liberal construction" adverted to in *Enslen, Administratrix, v. Wheeler, Administrator*, which, however, talks about a *"substantial* compliance in every *essential* particular...." That quotation further discusses "an omission of any *material* or particular requirement...." The cases then leave open the definition of substantial compliance and "material" requirement.

6. The better reasoned opinion is *Ball v. Vogtner*, 362 So.2d 894, (Ala.1978). In that case, while the Court recognizes that the creation of the lien depends on the strict observance of the statutory requirements, the Court also recognizes the purpose and intent of the filing of certificates to effect a lien in Alabama.

And that purpose is notice. The whole thrust of that opinion points to notice to subsequent title searchers where real property is concerned. In that case, there was a misnomer in the Certificate of Judgment, and the Court held "to impart constructive notice to the Vogtners, the Certificate would have to be in their chain of title...." Since the name was not properly in the Certificate of Judgment, it did not appear in the chain of title. A like conclusion is reached in *Cooke v. Avery*, 147 U.S. 375, 13 S.Ct. 30, 37 L.Ed. 209 (1893).

7. There is no problem about misnomer here. Nor can the failure of the Clerk of the U.S. District Court to include the cost amount to a material omissions. Costs are simply not a part of the judgment amount covered by the lien.

8. Nor can we say that there was a failure to substantially comply with the requirements of the Alabama statute, when the amount of the interest was improperly computed in the original judgment and Judgment Certificate entered. The principal amount of the judgment did not change. And the notice imparted to "all persons" of the existence of the lien thereby created, is not changed by virtue of the fact that the amount of interest was changed.

9. The more enlightened cases decided under these sections clearly bear out this practical reading of the Alabama statutes. See, for example: *Reuf v. Fulks,* 122 So. 14 (1929), (decided by a unanimous Supreme Court); *Cooke v. Avery, supra.* Cf. *Enslen, Administratrix v. Wheeler, Administrator,* 98 Ala. 200, 13 So. 473.

10. But the lien is established by Title 28, U.S.Code, Section 1963, and is measured by the provisions of the Alabama statutes. It is a valid and perfected lien when the certificate of judgment, substantially complying with the Alabama statute, is filed with the Judges of Probate in the appropriate counties. The lien, by virtue of that Federal statute, is on all property of the debtor in that county, subject to levy and execution. Conoco's judgment is thus valid and perfected as of April 22, 1982, in Montgomery, Autauga, and Elmore Counties as against the estate of C.W. Norman and as against the Estate of Zip Enterprises, Inc. *Cooke v. Avery,* cited above.

11. This conclusion obviates the preference question under Title 11, U.S.Code, Section 547, where another Certificate of Judgment was filed within the 90 day period reflecting the amended judgment of May 11, 1982, in Montgomery, Autauga and Elmore Counties as against the estate of C.W. Norman and Zip Enterprises, Inc.

12. The attack on the April 22 recordings by trustee on the ground that they are void under Alabama Code Section 6–9–211, because filed within four months of Bankruptcy, is not well taken. See *In re William Charles Fair,* 28 B.R. 160 (Bkrtcy. 1983).

13. The Conoco judgment liens filed for record in Chilton and Coffee Counties on May 26, 1982, are clearly preferential transfers under Title 11, U.S.Code, Section 547 and are due to be avoided at the instance of the trustee, Ed Hill, in this adversary proceeding Number 83–0084, as to property of Zip Enterprises, Inc. There were no certificates of judgment filed by Conoco in those counties before that date.

An appropriate Order will enter.